UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
PETER M. JAROWEY II, SOMERSET GROUP, LLC, :
JOHN B. HOLLISTER III, and DOUGLAS Q. HOLMES, :
:
Peter M. Jarowey II, John B. Hollister III and Douglas Q. :
Holmes Individually and Peter M. Jarowey II Derivatively : **ORAL ARGUMENT**
on Behalf of Camelot Entertainment Group, Inc., for the : **REQUESTED**
Second and Third Claims for Relief, :
:
          Plaintiffs, : Civil Action No. 11-Civ-2611
:
    -against- :
:
CAMELOT ENTERTAINMENT GROUP, INC., :
ROBERT P. ATWELL and STEVEN V. ISTOCK, :
:
          Defendants. :
------------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

    Defendants Camelot Entertainment Group, Inc., ("Camelot" or the "Company"), Robert P. Atwell ("Atwell"), and Steven V. Istock ("Istock") (collectively, the "Defendants"), by and through their attorneys SNR Denton US LLP, respectfully submit this reply memorandum of law in further support of their motion to enforce the settlement reached with Plaintiffs Peter M. Jarowey II ("Jarowey"), Somerset Group, LLC ("Somerset"), John B. Hollister III ("Hollister"), and Doug Q. Holmes ("Holmes"), during the August 31, 2011 mediation conducted by the Honorable James C. Francis, United States Magistrate Judge for the Southern District of New York.  Submitted herewith is the Reply Declaration of Jonathan E. Goldberg, Esq., dated May 14, 2012 (with exhibits).

**Preliminary Statement**

    In their response to the Defendants' motion to enforce the settlement, the Plaintiffs do not

-- because they cannot -- dispute the accuracy of the terms of the agreement reached before Magistrate Judge Francis on August 31, 2011 as set forth in the Defendants' initial papers.

Nor do the Plaintiffs dispute that those terms were negotiated and finalized between and among all of the parties and all counsel after a full-day of settlement negotiations conducted by Judge Francis at the United States courthouse that began at approximately 10 am and finished at approximately 7 pm.  They also do not -- because they cannot -- dispute that that 1/25/12 Settlement Papers accurately reflect the material terms to which the parties agreed that day.  Indeed, although the Plaintiffs label the 1/25/12 Settlement Papers "one sided," they do not -- because they cannot -- show how those papers do not reflect the parties' settlement.  In fact, those drafts contain not only the material terms agreed to in August 2011, but numerous paragraphs and terms requested by the Plaintiffs over the course of the exchange of drafts.  The Plaintiffs also do not dispute the fact that, under the law, this Court has the power to enforce the parties' settlement.

And yet, to this day, the Plaintiffs continue to refuse to execute written settlement papers, holding the Defendants hostage in this baseless suit.  The painful irony for the Defendants -- whose reputations and business have materially suffered as a result of the Plaintiffs' improper continuation of this needless case -- is that the settlement reached on August 31 is a very good deal for the Plaintiffs.  Were litigation to continue past the present motion, the Defendants' dispositive motions would show that the Plaintiffs' claims are without merit and that the Plaintiffs should never see a fraction of the outrageous, speculative, and undeserved damages they are seeking.

In support of their position that the Court should not enforce a settlement, and that a settlement was not even reached on August 31 (falsely describing it as a "preliminary, informal

resolution of a mere handful of points" (Pl. Br. 5)), the Plaintiffs make a variety of arguments that test the limits of permissible advocacy.  Specifically, the Plaintiffs assert, among other things, that the Court's September 7, 2011 order of discontinuance demonstrates that there was no settlement reached on August 31, while failing to quote language from that order expressly recognizing that the parties had informed the Court that they "**have reached a settlement of this matter.**"  The Plaintiffs also argue that defense counsel's letters to the Court requesting additional time to finalize the settlement papers and referencing negotiations also demonstrate that a settlement had not been reached, while omitting the irrefutable fact that all of such "negotiations" after August 31 resulted from the *Plaintiffs'* various attempts after the parties' August 31 settlement to change material terms reflected above and/or add language and terms to which the Defendants had never agreed.

      The Plaintiffs also argue that a comparison of different sets of draft settlement papers submitted by the Defendants to the Plaintiffs also undermines the enforceability of the parties' settlement.  This argument is also baseless.  The changes identified by the Plaintiffs in their opposition brief resulted from either the Defendants' willingness to compromise in response to the Plaintiffs' requests or the need to correct the earlier drafts to conform the papers to the parties' August 31 settlement.

      The Plaintiffs also continue to argue that an unrelated agreement between Camelot and JSJ, a third party, somehow permits the Plaintiffs to eschew their agreement and reinstate the litigation.  Regardless of whether the JSJ deal somehow interfered with the parties' settlement -- which is disputed by the Defendants -- this JSJ argument is in effect moot.  There is no freeze on stock conversions.

      The Plaintiffs also assert that if the Defendants are correct that a settlement was reached

on August 31, then the first note will be due in August 31, 2012 (and ironically (and falsely) claim that the Defendants have engaged in "foot dragging" in connection with the papering of the parties' settlement). This baseless argument appears to be Plaintiffs' attempt to expedite payment under the parties' August 31 agreement in the event that this Court grants the Defendants' motion, a schedule to which their unclean hands are not entitled. Camelot agreed to issue to Jarowey six notes with a 12 month maturity date, to run consecutively. It was clear to all parties during the August 31 settlement negotiations that Camelot would have a full 12 months to work with Mr. Jarowey to sell the first note to a third party. There were never any statements by any of the parties that the first note would be due 12 months from August 31 -- it was always to run 12 months from the date of executing the settlement papers. Notwithstanding that fact, this does not mean that an enforceable agreement was not reached on August 31. It was. The lack of a court reporter at approximately 7 pm that evening should not matter when there is no dispute about the material terms agreed to that day and when those terms were papered there and then in contemporaneous notes before a Federal Judge and with the Court's material assistance.

     Finally, the Plaintiffs attempt to argue -- without any factual support -- that Camelot never assumed the defense of Mr. Jarowey and that the Defendants would have settled the Utah Litigation case on Mr. Jarowey's behalf regardless of the settlement in this case. These arguments are frivolous. As shown in the Defendants' initial motion papers, the settlement papers in the Utah Litigation clearly show that Camelot and its counsel represented Mr. Jarowey and settled the case on Mr. Jarowey's behalf.

     The Plaintiffs cannot escape the fact that they settled this case last Summer and were provided valuable benefits by the Defendants as a result. The time has come that they be forced to live up to their end of the bargain. This case should be dismissed with prejudice and the

4

Defendants should be awarded their fees and costs.

## ARGUMENT

### THE AGREEMENT REACHED BETWEEN THE PARTIES ON AUGUST 31 SHOULD BE ENFORCED

**A. The Court's September 2011 Order Recognized that the Parties Had Settled the Case**

The Plaintiffs argue that a settlement was not reached on August 31, 2011 and quote selectively from Judge Holwell's order in support of this bogus position. In fact, the parties *had* settled the case on August 31 with the assistance of U.S. Magistrate Judge Francis, as reflected in the first paragraph of the Court's order that is not quoted by the Plaintiffs. That paragraph states as follows:

> **The parties have informed the Court that "they have reached a settlement of this matter."** Accordingly, it is hereby ORDERED that this action is discontinued without costs (including attorney's fees) to either party and without prejudice to restoration of the action to the calendar of the undersigned within 30 days of the date of this Order if in fact there has not been a settlement of this matter. If either party wishes to reinstate this matter, the party must make a letter application to the undersigned before the 30-day period expires.

Goldberg Reply Cert., Exh. A (Order, dated September 6, 2011 ("Order of Discontinuance")), (emphasis added).

The Order of Discontinuance correctly reflects that the parties reached a settlement prior to September 6, 2011 (the date of the order) and the Plaintiffs should be so bound.

The Plaintiffs argue that the language granting the parties 30 days to inform the Court "if in fact there has not been a settlement of this matter" demonstrates that there was no settlement reached prior to that time. This argument is baseless and mischaracterizes the purpose and meaning of the order, which was to provide the parties with an opportunity to paper the settlement. Further, it is axiomatic that this language is standard language used by courts to

allow parties time to finalize their settlement papers.

Moreover, as a matter of fact, until the Plaintiffs unilaterally wrote the Court in January 2012 requesting to reinstate the case, at no time did any of the parties ever inform the Court that "there has not been a settlement of this matter." To the contrary, the parties simply asked the Court -- a number of times -- to extend the time within which to reinstate the case because the settlement papers had not been finalized.[1]

The Defendants have *never* disputed the fact that the August 31 settlement was going to involve the creation of a written settlement agreement and additional documents, such as the notes to be issued by Camelot to Mr. Jarowey. This does not mean, however, that the Plaintiffs are free at this time to argue that there was no enforceable settlement reached on August 31 -- especially where, as here, they have already benefited from that settlement. The terms of the settlement are contained in the drafts sent to the Plaintiffs in January 2012 and should be enforced.

Moreover, the Plaintiffs' argument that the existence of additional negotiations after August 31 demonstrates that no enforceable settlement was reached on August 31 is entirely disingenuous. The additional "negotiations" between counsel after August 31 resulted primarily from the fact that, in response to the first set of settlement papers sent by the Defendants to the Plaintiffs in September 2011, the Plaintiffs changed material terms of the August 31 agreement and added entirely new terms. For example, although the very first material term of the agreement reached on August 31 was that "Camelot would issue Jarowey six notes for $100K

---

[1] As one example of the Plaintiffs' misleading arguments, the October 5, 2011 letter sent by the Defendants' counsel to the Court requesting an extension of the 30 day deadline makes clear that the settlement was not yet "finalized" only insofar as additional time was needed for "completion of the parties' settlement papers" and to "exchange drafts." Carney Aff., Exh. 4. Indeed, the Plaintiffs also mischaracterize their own subsequent letter to the Court, dated October 25, 2011, stating in their brief that the letter supposedly informed the Court that "the agreement still had not been finalized." Pl. Br. 6. In fact, that letter recognizes that what was not yet finalized was the "various settlement agreement related documents."

each, dated as of 12 months ago in 2010 and maturity dates of 12 months successively, 5% interest accrued on the outstanding balance" -- which material term was set forth in the draft sent to the Plaintiffs in September 2011 and also in the 1/25/12 Settlement Papers -- the Plaintiffs, without any prior notice to the Defendants, sent back to the Defendants an agreement and set of notes changing that term to "24 notes" (instead of "six notes") in the amount of "$25,000 each" (instead of "$100,000 each") and requiring payment every few months rather than by the end of each year.  *See* Goldberg Reply Cert., Exhs. B & C (modified drafts sent by Plaintiffs on November 9, 2011), ¶8(a).

In addition, although the parties expressly agreed on August 31 that Camelot would have a 75 day grace period in the event of a payment default on one of the Jarowey notes -- which grace period was reflected in the papers sent by the Defendants to the Plaintiffs in September 2011 and in the 1/25/12 Settlement Papers -- on November 9, 2011, the Plaintiffs, without any prior notice, sent back to the Defendants a modified agreement and modified set of notes containing a list of numerous additional "default" triggers never before agreed upon, including some with only a 3 day grace period!  Goldberg Reply Cert., Exhs. B & C, ¶ 16.  The Plaintiffs also deleted protections placed in the releases for the individuals -- which protections were consistent with the complete releases agreed to on August 31 -- and added a non-mutual and utterly absurd "non-disparagement" clause that would only have prevented the Defendants from disparaging the Plaintiffs and required the Defendants to state that they had not done anything in the past to disparage the Plaintiffs.  Goldberg Reply Cert., Exhs. B & C, ¶ 5.  As with the Plaintiffs' other changes, this non-material clause inserted by the Plaintiffs in their November 9, 2011 drafts was *never* agreed to, let alone even discussed, during the full-day settlement conference conducted and concluded on August 31.

**B. The Changes Between the Drafts Submitted by the Defendants Resulted from the Defendants' Willingness to Compromise in Response to the Plaintiffs' Requests or the Need to Correct the Earlier Drafts to Conform the Papers to the Parties' Agreement**

The changes between the Defendants' drafts -- identified by the Plaintiffs and set forth behind Exhibits 9 and 15 of Mr. Carney's affidavit -- resulted from the Defendants' willingness to compromise in response to the Plaintiffs' requests or the need to correct the earlier drafts to conform the papers to the parties' agreement.  Goldberg Reply Cert. ¶ 4.  Thus, the Plaintiffs' argument that a comparison of the Defendants' alleged "contradictory" drafts undermines the enforceability of the settlement is entirely misleading.  In any event, however, the drafts sent to the Plaintiffs in September and December are simply not relevant as to whether the documents sent in January 2012 accurately reflect the parties' settlement agreement.  The Plaintiffs have not shown otherwise.

**C. The JSJ Deal is Expiring and The Plaintiffs Can No Longer Use that Deal As An Excuse to Avoid a Dismissal of this Case With Prejudice**

As the Plaintiffs well know, the JSJ transaction is expiring.  *See* Camelot 8K (Carney Aff., Exh. 12).[2]  Indeed, counsel for the Defendants informed counsel for the Plaintiffs of this fact on a number of occasions.  Goldberg Reply Cert. ¶ 5.  Thus, the JSJ deal can no longer be used by the Plaintiffs to avoid settling this matter pursuant to the agreed terms.

**D. The First Twelve Month Note for $100,000 Runs from the Date of Execution**

The Plaintiffs also assert that if the Defendants are correct that a settlement was reached on August 31, then the first note will be due in August 31, 2012 (and ironically (and falsely) claim that the Defendants have engaged in "foot dragging" in connection with the papering of the parties' settlement).  This baseless argument appears to be the Plaintiffs' attempt to expedite payment under the parties' August 31 agreement in the event that this Court grants the

---

[2] The 8K correctly notes that the deal was a 6 month deal beginning in December 2011.

Defendants' motion, a schedule to which their unclean hands are not entitled. Camelot agreed to issue to Mr. Jarowey six notes with a 12 month maturity date, to run consecutively. It was clear to all parties during the August 31 settlement negotiations that Camelot would have a full 12 months to work with Mr. Jarowey to sell the first note to a third party. There were never any statements by any of the parties that the first note would be due 12 months from August 31 -- it was always to run 12 months from the date of executing the settlement papers. Goldberg Reply Cert. ¶ 6. Notwithstanding that fact, this does not mean that an enforceable agreement was not reached on August 31. It was. The lack of an "after hours" court reporter at approximately 7 pm that evening should not matter when there is no dispute about the material terms agreed to that day and when those terms were papered there and then in contemporaneous notes before a Federal Judge and with the Court's material assistance, as shown in the Defendants' initial motion papers.

**E. Jarowey Received a Huge Benefit as the Result of the Settlement of the Utah Litigation**

The Plaintiffs claim that Camelot did not assume the representation of Mr. Jarowey in the Utah Litigation, that the Defendants would have settled the case on his behalf anyway, and that Mr. Jarowey has not been "indemnified" for his attorney's fees. These arguments are frivolous. As shown in the Defendants' initial motion papers, the settlement papers in the Utah Litigation clearly show that Camelot settled the case on Mr. Jarowey's behalf and that Jonathan Levitan assumed the representation of Mr. Jarowey for that purpose. Goldberg Cert., dated March 23, 2012, Exh. 4. Further, had Camelot not agreed to include Mr. Jarowey as part of the settlement, he easily could have been maintained as a defendant by the Plaintiffs in the Utah Litigation. In addition, the Defendants did not agree on August 31 to "reimburse" Mr. Jarowey for his attorneys' fees in the Utah Litigation. The agreement reached before Judge Francis was to

9

provide Mr. Jarowey with counsel, which was done, and to indemnify him in the event of a finding of liability, which was done by way of the settlement reached on his behalf without him having to contribute a cent.[3]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Defendants' initial papers, the Defendants respectfully request that the Court grant their motion and all requested relief.

Dated: New York, New York
May 14, 2012

SNR DENTON US LLP

By: s/Jonathan E. Goldberg
    Jonathan E. Goldberg

---

[3] The cases cited by the Plaintiffs, for example, *Rosenberg v. Inner City Broad Corp.*, 2001 US Dist LEXIS 13192, (S.D.N.Y. Aug. 29, 2001), are easily distinguishable because here there is *no* dispute regarding the settlement terms agreed to by the parties on August 31, 2011. Thus, the lack of an after hours "court reporter" or a signed stipulation that day to memorialize those terms are irrelevant.